1  **JENNIFER L. COON**
   California State Bar No. 203913
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, CA 92101-5008
   (619) 234-8467/Fax: (619) 687-2666
4  E-Mail: jennifer_coon@fd.org

5  Attorneys for Mr. Garcia

6

7

8                           UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10                          **(HONORABLE M. JAMES LORENZ)**

11  UNITED STATES OF AMERICA,        )   CASE NO. 08CR1448-L
                                     )
12          Plaintiff,                )   DATE:       June 30, 2008
                                     )   TIME:       2:00 p.m.
13  v.                               )
                                     )   STATEMENT OF FACTS AND
14  JOSE MANUEL GARCIA,              )   MEMORANDUM OF POINTS AND
                                     )   AUTHORITIES IN SUPPORT OF MOTIONS
15          Defendant.                )
                                     )
16

17                                      **I.**

18                                 **BACKGROUND**

19      On February 17, 2008, Mr. Garcia was arrested. On May 7, 2008, the government filed a one-count

20  indictment charging a violation of 8 U.S.C. §§ 1326(a) and (b). The indictment was returned by the January

21  2007 grand jury.

22      These motions follow.

23                                      **II.**

24                      **MOTIONS TO DISMISS THE INDICTMENT**

25  **A.    Motion to Dismiss the Indictment Because it Fails to Allege All Elements of the Charged Offense**

26      The indictment must be dismissed because the government has failed to properly allege all elements

27  of the offense. "Two corollary purposes of an indictment are to ensure that the defendant is being prosecuted

28  on the basis of facts presented to the grand jury and to allow the court to determine the sufficiency of the

indictment." United States v. Lane, 765 F.2d 1376, 1380 (9th Cir. 1985). "To serve each of these functions, the indictment must allege the elements of the offense charged and the facts which inform the defendant of the specific offense with which he is charged." United States v. Pernillo-Fuentes, 252 F.3d 1030, 1032 (9th Cir. 2001) (quoting Lane, 765 F.2d at 1380). Accordingly, "[a]n indictment's failure to recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw." United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).

Here, the indictment must be dismissed because it fails to allege both the dates of a previous felony conviction and of a previous removal from the United States subsequent to that conviction. The indictment charges a violation of 8 U.S.C. §§ 1326(a) and (b). The statutory maximum sentence for violation of 8 U.S.C. § 1326(a) is two years of imprisonment. Pursuant to 8 U.S.C. § 1326(b), however, a higher statutory maximum may apply if the alien was removed subsequent to certain predicate crimes. In United States v. Salazar-Lopez, 506 F.3d 748, 751-52 (9th Cir. 2007), the Ninth Circuit held that an allegation in the indictment that the defendant "had been removed on a specific, post-conviction date" is "required" in order to trigger the enhanced penalties under 8 U.S.C. § 1326(b). Here, although the indictment alleges a violation of 8 U.S.C. § 1326(b), it fails to allege either a specific removal date or the temporal relationship between that removal and a prior conviction. Rather, the indictment merely alleges that Mr. Garcia was removed from the United States subsequent to one unassociated date, April 15, 1996. Because the indictment fails to allege all of the necessary elements of the charged offense, § 1326(b), it must be dismissed.

**B.    Motion to Dismiss The Indictment Because it Violates Mr. Garcia's Right to Presentment.**

Mr. Garcia has a Fifth Amendment right to have a grand jury pass upon those facts necessary to convict him at trial. In the indictment, the government included the language: "It is further alleged that defendant JOSE MANUEL GARCIA was removed from the United States subsequent to April 15, 1996."[1] The indictment in this case violates Mr. Garcia's right to presentment in two ways. First, the language added

---

[1] Presumably, the government added this language in an attempt to comply with the Ninth Circuit's decision in United States v. Covian-Sandoval, 462 F.3d 1090 (9th Cir. 2006). In Covian-Sandoval, the Ninth Circuit held that it is an Apprendi violation for a court to increase a person's statutory maximum under 8 U.S.C. § 1326(b) via a court-finding that a person had been removed from the United States following a conviction. This language, however, does not cure the problems with this indictment. Should sentencing become necessary, Mr. Garcia will file further briefing on this issue.

by the government does not ensure that the grand jury actually found probable cause that Mr. Garcia was deported after April 15, 1996, as opposed to simply being physically removed from the United States. Second, that the grand jury found probable cause to believe that Mr. Garcia was removed "subsequent to April 15, 1996" does not address the possibility that the government may at trial rely on a deportation that was never presented to, or considered by, the grand jury.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V. The Sixth Amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . .." U.S. Const. Amend. VI. Thus, a defendant has a constitutional right to have the charges against him presented to a grand jury and to be informed of the grand jury's findings via indictment. See Russell v. United States, 369 U.S. 749, 763 (1962) (An indictment must "contain[] the elements of the offense intended to be charged, and sufficiently apprise[] the defendant of what he must be prepared to meet.").

To be sufficient, an indictment must allege every element of the charged offense. See United States v. Morrison, 536 F.2d 286, 287 (9th Cir. 1976) (citing United States v. Debrow, 346 U.S. 374 (1953)). Indeed, in order to be sufficient, an indictment must include implied elements not present in the statutory language. See Du Bo, 186 F.3d at 1179. "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as criminal proceedings progress." United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.

In the indictment, the government here has added the language: "It is further alleged that defendant JOSE MANUEL GARCIA was removed from the United States subsequent to April 15, 1996." There is no indication from this allegation that the grand jury was charged with the legal meaning of the word "removal" applicable in this context, as opposed to being simply removed from the United States in a colloquial sense. It is clear from Covian-Sandoval that in order to trigger the enhanced statutory maximum contained in section 1326(b), the government must prove that a person was removed—as that term is used in the immigration context—after having suffered a conviction. 462 F.3d at 1097-1098 (noting as part of its analysis that immigration proceedings have fewer procedural protections that criminal proceedings). A deportation has

1  the following elements: "(1) that a deportation proceeding occurred as to [the] defendant and as a result, [(2)]
2  a warrant of deportation was issued and [(3)] executed by the removal of the defendant from the United
3  States." United States v. Castillo-Basa, 483 F.3d 890 (9th Cir. 2007) (citing, without contesting, the elements
4  of a deportation provided by the district court.)  As this is the type of removal the government must prove
5  before a petit jury, it is necessary that the government allege such a removal before the grand jury.  As
6  returned, however, there is no assurance from the face of the indictment that the grand jury in this case was
7  charged with the type of removal necessary to increase a person's statutory maximum under section 1326(b).

8  As such, there is no fair assurance that the grand jury will have passed upon those facts necessary to
9  convict Mr. Garcia.  Additionally, as charged, there is no fair assurance that the indictment will contain those
10 allegations the government will attempt to prove at trial.  If the government alleged before the grand jury that
11 Mr. Garcia was removed (in a colloquial sense), but offers proof at trial that Mr. Garcia was removed (in an
12 immigration sense), there will be a constructive amendment of the indictment at trial.  See Stirone v. United
13 States, 361 U.S. 212, 217-19 (1960).  Either scenario represents a violation of Mr. Garcia's right to
14 presentment.  Stirone, 361 U.S. at 218-19.

15 A second problem with the indictment is that there is no indication which (if any) deportation the
16 government presented to the grand jury.  In most cases, the government will have a choice of deportations
17 to present to the grand jury to support an allegation that a person had been deported after a specific date.
18 According to information provided by the government, although not conceded by the defendant, Mr. Garcia
19 has been subjected to removal proceedings on more than one occasion.  This renders it a very real possibility
20 that the government alleged one deportation to the grand jury to sustain its allegation that Mr. Garcia was
21 removed from the United States, but will attempt to prove at trial a wholly different deportation to sustain its
22 trial proof.  If this were to turn out to be the case, Mr. Garcia's right to have the grand jury pass on all facts
23 necessary to convict him would be violated.  See Du Bo, 186 F.3d 1179.

24 **C.    Motion to Dismiss the Indictment Due to Misinstruction of the Grand Jury.**

25 The indictment in the instant case was returned by the January 2007 grand jury.  That grand jury was
26 instructed on January 11, 2007.  The instructions to the impaneled grand jury deviate from the instructions
27 at issue in the major Ninth Circuit cases challenging a form grand jury instruction previously given in this
28

district in several ways.[2]  First, the grand jury was improperly instructed that their singular duty is to determine whether or not probable cause exists and that they have no right to decline to indict when the probable cause standard is satisfied.  Second, the grand jury was improperly instructed of a non-existent prosecutorial duty to present exculpatory evidence.  These instructions were compounded by the erroneous instructions and comments to prospective grand jurors during *voir dire* of the grand jury panel, which immediately preceded the instructions.  Therefore, the indictment should be dismissed.

**D.      Motion to Dismiss the Indictment Because the Charging Statute is Unconstitutional**

The Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), renders 8 U.S.C. § 1326 unconstitutional.  Although this argument is foreclosed by current Ninth Circuit precedent, see United States v. Covian-Sandoval, 462 F.2d 1090, 1096-97 (9th Cir. 2006), it is presented for purposes of further appellate review.

In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court held that in a § 1326 prosecution, the fact of a prior conviction need not be alleged in the indictment to increase a defendant's maximum sentence.  Subsequently, however, in Apprendi, the Supreme Court held that any fact that increases the statutory maximum sentence must be pled in the indictment, submitted to a jury, and proved beyond a reasonable doubt.  See 530 U.S. at 476.  Section 1326 sets forth a scheme in which certain facts – prior convictions – may drastically increase the applicable statutory maximum without being set forth in the indictment or proven at trial.  According to the explicit mandate of Apprendi, this violates the Fifth and Sixth Amendments.  To the extent that Almendarez-Torres holds that section 1326(b) was intended by Congress to create sentencing enhancements for a judge to determine rather than elements of separate offenses, section 1326 is unconstitutional under Apprendi.

**III.**

**MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT**

The above arguments to dismiss the indictment based on the government's failure to comply with

---

[2] See, e.g., United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006); United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005) (Navarro-Vargas II); United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004)(Navarro-Vargas I); United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002) (per curiam).  If the Court or the government request further briefing on this issue, or the transcript from the grand jury proceedings, then it will be provided forthwith.

1  Mr. Garcia's Fifth and Sixth Amendment rights is premised on <u>Covian-Sandoval</u> having read into section
2  1326 an additional element—a deportation that occurred at a particular time—that the government must plead
3  to the grand jury and prove to a jury. To the extent the government argues that <u>Covian-Sandoval</u> did not
4  create an additional element, the indictment contains surplusage. In other words, if the government argues
5  that the <u>timing</u> of a person's deportation is not a element of section 1326, but rather a sentencing factor under
6  subsection (b) of section 1326, the indictment alleges a fact—the timing of a person's deportation—the
7  Supreme Court has clearly held to be decided by a judge.

8        The Ninth Circuit has "repeatedly held that language [in an indictment] that describes elements
9  beyond what is required under statute is surplusage and need not be proved at trial." <u>Bargas v. Burns</u>,
10 179 F.3d 1207, 1216 n. 6 (9th Cir. 1999). Surplusage in an indictment is subject to being struck at the request
11 of the defendant. <u>United States v. Fernandez</u>, 388 F.3d 1199, 1220-21 (9th Cir. 2004). In this case, if the
12 government argues that the date of a person's deportation is not a required element of section 1326, the
13 indictment contains language beyond that which is necessary to convict Mr. Garcia of violating section 1326.
14 If the date of a person's deportation is not an element of section 1326, then the language in the
15 indictment—"It is further alleged that defendant JOSE MANUEL GARCIA was removed from the United
16 States subsequent to April 15, 1996"— is surplusage. So too is the government's allegation in the indictment
17 that Mr. Garcia violated section 1326, subsection (b).

18       At one time, the Ninth Circuit considered subsection (b) of section 1326 to be a separate offense from
19 subsection (a). See <u>United States v. Corona-Sanchez</u>, 291 F.3d 1201, 1203 (9th Cir. 2002) (*en banc*). This
20 changed, however, following the Supreme Court's decision in <u>Almendarez-Torres v. United States</u>,
21 523 U.S. 224 (1998). See <u>Corona-Sanchez</u>, 291 F.3d at 1203. In <u>Almendarez-Torres</u>, the Supreme Court
22 decided that subsection (b) of section 1326 described a sentencing provision, to be determined by a judge,
23 rather than a substantive offense. See <u>id.</u> Following <u>Almendarez-Torres</u>, the Ninth Circuit rethought the way
24 in which subsection (b) should be viewed, to the extent that indictments and judgements that reflect a
25 violation of both subsection (a) and subsection (b) of section 1326 should have the reference to subsection (b)
26 struck to "unambiguously reflect that the defendant was convicted of only one punishable offense
27 pursuant . . .." <u>Id.</u>

28       Although an allegation of a particular date of deportation would likely be an appropriate response on

the government's part to the holding of Covian-Sandoval, the government here has chosen to include in the indictment an allegation that goes solely towards an allegation under subsection (b) of section 1326. Indeed, the government has chosen to actually allege a violation of subsection (b) of section 1326 in the indictment. As Almendarez-Torres makes clear, however, Congress clearly intended findings under subsection (b) of section 1326 to be made by a judge, rather than a jury. Almendarez-Torres, 523 U.S. at 235 ("we believe that Congress intended to set forth a sentencing factor in subsection (b)(2) and not a separate criminal offense).

Although the Ninth Circuit is free to overrule its own precedent regarding whether Congress intended a statutory provision to be decided by a judge, rather than a jury, see, e.g., United States v. Buckland, 289 F.3d 558, 564-68 (9th Cir. 2002) (*en banc*) (discussing enhanced penalties under 21 U.S.C. § 841), it has not seen fit to overrule the Supreme Court's decision in Almendarez-Torres. See, e.g., United States v. Weiland, 420 F.3d 1062, 1079 n. 16 (9th Cir. 2005). For these reasons, to the degree the government argues that Covian-Sandoval did not create an additional element of section 1326, the government has pled in the indictment an allegation that Congress intended to be decided by judge, rather than a jury.[3] Therefore, pursuant to Federal Rule of Criminal Procedure 7(d), Mr. Garcia moves to strike this surplusage from the indictment.

## IV.

## MOTION TO PRODUCE GRAND JURY TRANSCRIPTS

Mr. Garcia hereby moves this Court to compel the government to produce all grand jury transcripts in this case. See U.S. CONST. AMENDS V & VI[4]. Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows

---

[3] The holdings in Covian-Sandoval and Almendarez-Torres also render subsection (b) of section 1326 unconstitutional. In Covian-Sandoval, the Ninth Circuit held that a jury must determine the timing of a person's deportation to trigger subsection (b)'s enhanced statutory maximum. Covian-Sandoval, 462 F.3d 1097-1098. In Almendarez-Torres, however, the Supreme Court held that Congress intended subsection (b) to be a sentencing provision to be determined by a judge. Almendarez-Torres, 523 U.S. at 235. It is thus clear that subsection (b), as written and construed by the Supreme Court, violates Apprendi.

[4] The Supreme Court has found that "[t]he grand jury is an integral part of our constitutional heritage which was brought to this country with the common law. The Framers, most of them trained in the English law and traditions, accepted the grand jury as a basic guarantee of individual liberty . . . the grand jury continues to function as a barrier to reckless or unfounded charges. 'Its adoption in our Constitution as the sole method for preferring charges in serious criminal cases shows the high place it held as an instrument of justice.' Costello v. United States, 350 U.S. 359, 362 (1956). Its historic office has been to provide a shield against arbitrary or oppressive action,

disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Given the arguments raised above, it is clear that "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P 6(e)(3)(E)(ii). Mr. Garcia requests the Court "authorize disclosure" of the grand jury transcript to allow him to adequately prepare for trial and to perfect his appellate record. See id.

## V.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

Mr. Garcia moves for the production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

(1)   The Defendant's Statements. The government must disclose to the defendant all copies of any written or recorded statements made by the defendant; the substance of any statements made by the defendant which the government intends to offer in evidence at trial -- either in its case-in-chief or in rebuttal; see id., any response by the defendant to interrogation; the substance of any oral statements which the government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the government agent; any response to any Miranda warnings which may have been given to the defendant; as well as any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A)[5]. The Advisory Committee Notes and the 1991 Amendments to Rule 16 make clear that the Government must reveal all the defendant's statements, whether oral or written, regardless of whether the government intends

---

by insuring that serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance. " United States v. Manduano, 425 U.S. 564, 571 (1976). In order to ensure that the criminally accused are safeguarded from reckless and unfounded charges, judges must take their duty to provide guidance seriously and not simply pay lip service to the assurances of the government. It is curious why the government, in this district in particular, fights so hard to keep grand jury proceedings sealed. Interestingly, in many cases, the "witness" who "testifies" before the grand jury is a border patrol agent who neither participated in the arrest or the investigation. He is only called to read a report which has been prepared by others. Such a practice does not allow for the considered judgment of grand jurors. Thus, the release of transcripts is appropriate.

[5] Of course, any of Mr. Garcia's statements, which are exculpatory, must be produced, as well. See Brady v. Maryland, 373 U.S. 83 (1963).

to make any use of those statements. Federal Rule of Criminal Procedure 16 is designed "to protect the defendant's rights to a fair trial." United States v. Rodriguez, 799 F.2d 649 (11th Cir. 1986); see also United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987) (reversing conviction for failure to provide statements offered in rebuttal -- government's failure to disclose statements made by the defendant is a serious detriment to preparing trial and defending against criminal charges).

(2)   Arrest Reports and Notes. The defendant also specifically requests that the government turn over all arrest reports, notes and TECS records not already produced that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts, referral slips, or other documents in which statements of the defendant or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland. The government must produce arrest reports, investigators' notes, memos from arresting officers, sworn statements, and prosecution reports pertaining to the defendant. See Fed. R. Crim. P. 16(a)(1)(B) and (C), 26.2 and 12(I); United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (original notes with suspect or witness must be preserved); see also United States v. Anderson, 813 F.2d 1450, 1458 (9th Cir. 1987) (reaffirming Harris' holding).

(3)   Brady Material. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Kyles v. Whitley, 514 U.S. 419 (1995). Under Brady, Kyles and their progeny, impeachment, as well as exculpatory evidence, falls within the definition of evidence favorable to the accused. See also United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976). This includes information obtained from other investigations which exculpates Mr. Garcia.

(4)   Any Information That May Result in a Lower Sentence Under The Guidelines. The government must also produce this information under Brady v. Maryland. This request includes any cooperation or attempted cooperation by the defendant, as well as any information, including that obtained from other investigations or debriefings, that could affect any base offense level or specific offense characteristic under Chapter Two of the Guidelines. The defendant also requests any information relevant to a Chapter Three adjustment, a determination of the defendant's criminal history, and information relevant to any other application of the Guidelines.

1    (5)    <u>The Defendant's Prior Record</u>.  The defendant requests disclosure of his prior record.
2 Fed. R. Crim. P. 16(a)(1)(B).

3    (6)    <u>Any Proposed 404(b) Evidence</u>.  The government must produce evidence of prior similar acts
4 under Fed. R. Crim. P. 16(a)(1)(C) and Fed. R. Evid. 404(b) and 609.  In addition, "upon request of the
5 accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of
6 any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial and the purpose for
7 which introduction is sought.  This applies not only to evidence which the government may seek to introduce
8 in its case-in-chief, but also to evidence which the government may use as rebuttal.  See <u>United States v.</u>
9 <u>Vega</u>, 188 F.3d 1150 (9th Cir. 1999).  The defendant is entitled to "reasonable notice" so as to "reduce
10 surprise," preclude "trial by ambush" and prevent the "possibility of prejudice."  <u>Id.</u>; <u>United States v. Perez-</u>
11 <u>Tosta</u>, 36 F.3d 1552, 1560-61 (11th Cir. 1994).  Mr.Garcia requests such reasonable notice at least two weeks
12 before trial so as to adequately investigate and prepare for trial.

13    (7)    <u>Evidence Seized</u>.  The defendant requests production of evidence seized as a result of any
14 search, either warrantless or with a warrant.  Fed. R. Crim. P. 16(a)(1)(C).

15    (8)    <u>Request for Preservation of Evidence</u>.  The defendant specifically requests the preservation
16 of any and all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody,
17 or care of the government and which relates to the arrest or the events leading to the arrest in this case.  This
18 request includes, but is not limited to, the results of any fingerprint analysis, the defendant's personal effects,
19 and any evidence seized from the defendant or any third party in relation to this case.

20    (9)    <u>Henthorn Material</u>.  Mr. Garcia requests that the Assistant United States Attorney assigned
21 to this case oversee a review of all personnel files of each agent involved in the present case for impeachment
22 material.  <u>Kyles</u>, 514 U.S. at 419; <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991); <u>United States v.</u>
23 <u>Lacy</u>, 896 F. Supp. 982 (N.D. Ca. 1995).  At a minimum, the prosecutor has the obligation to inquire of his
24 agents in order to ascertain whether or not evidence relevant to veracity or other impeachment exists.

25    (10)   <u>Tangible Objects</u>.  The defendant requests the opportunity to inspect and copy, as well as test,
26 if necessary, all other documents and tangible objects, including photographs, books, papers, documents,
27 fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for
28 use in the government's case-in-chief or were obtained from or belong to the defendant.  Fed. R. Crim.

1  P. 16(a)(1)(C). Specifically, to the extent they were not already produced, the defendant requests copies of
2  all photographs in the government's possession, including, but not limited to, the defendant and any other
3  photos taken in connection with this case.

4      (11)   <u>Expert Witnesses</u>.  The defendant requests the name, qualifications, and a written summary
5  of the testimony of any person that the government intends to call as an expert witness during its case in chief.
6  Fed. R. Crim. P. 16(a)(1)(E). The defense requests that notice of expert testimony be provided at a minimum
7  of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony,
8  including obtaining its own expert and/or investigating the opinions and credentials of the government's
9  expert. The defense also requests a hearing in advance of trial to determine the admissibility of qualifications
10 of any expert. <u>See</u> <u>Kumho v. Carmichael Tire Co.</u> 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper"
11 and must determine reliability and relevancy of expert testimony and such determinations may require
12 "special briefing or other proceedings . . ..").

13     (12)   <u>Evidence of Bias or Motive to Lie</u>.  The defendant requests any evidence that any prospective
14 government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his or
15 her testimony.

16     (13)   <u>Impeachment Evidence</u>.   The defendant requests any evidence that any prospective
17 government witness has engaged in any criminal act whether or not resulting in a conviction and whether any
18 witness has made a statement favorable to the defendant.  <u>See</u> Fed. R. Evid. 608, 609 and 613; <u>Brady v.</u>
19 <u>Maryland</u>.

20     (14)   <u>Evidence of Criminal Investigation of Any Government Witness</u>. The defendant requests any
21 evidence that any prospective witness is under investigation by federal, state or local authorities for any
22 criminal conduct.

23     (15)   <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>. The
24 defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show
25 that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and
26 any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an
27 alcoholic.

28

1      (16)   Jencks Act Material. The defendant requests production in advance of trial of all material,
2 including any tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500;
3 Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at the request of the defendant
4 to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate
5 account of the witness' interview is sufficient for the report or notes to qualify as a statement under section
6 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963); see also United States v. Boshell, 952
7 F.2d 1101 (9th Cir. 1991) (holding that, where an agent goes over interview notes with subject, interview notes
8 are subject to Jencks Act).

9      (17)   Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), the defendant
10 requests all statements and/or promises, express or implied, made to any government witnesses, in exchange
11 for their testimony in this case, and all other information which could arguably be used for the impeachment
12 of any government witnesses.

13      (18)   Agreements Between the Government and Witnesses. In this case, the defendant requests
14 identification of any cooperating witnesses who have committed crimes, but were not charged, so that they
15 may testify for the government in this case. The defendant also requests discovery regarding any express or
16 implicit promise; understanding; offer of immunity; past, present, or future compensation; or any other kind
17 of agreement or understanding, including any implicit understanding relating to criminal or civil income tax,
18 forfeiture or fine liability between any prospective government witness and the government (federal, state
19 and/or local). This request also includes any discussion with a potential witness about, or advice concerning,
20 any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not
21 followed.

22      Pursuant to United States v. Sudikoff, 36 F.Supp.2d 1196 (C.D. Cal. 1999), the defense requests all
23 statements made, either personally or through counsel, at any time, which relate to the witnesses' statements
24 regarding this case, any promises -- implied or express -- regarding punishment/prosecution or detention of
25 these witnesses, any agreement sought, bargained for or requested, on the part of the witness at any time.

26      (19)   Informants and Cooperating Witnesses. To the extent that there was any informant, or any
27 other tip leading to a TECS hit in this case, the defendant requests disclosure of the names and addresses of
28 all informants or cooperating witnesses used, or to be used, in this case, and in particular, disclosure of any

informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Garcia. The government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

(20) <u>Bias by Informants or Cooperating Witnesses</u>. The defendant requests disclosure of any information indicating bias on the part of any informant or cooperating witness. <u>Giglio v. United States</u>. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

(21) <u>A-File and Deportation-Related Audiotapes and Documents</u>. Mr. Garcia requests that this Court order the government to produce a full copy of all A-Files, all recordings of all deportation proceedings relevant to Mr. Garcia, and all documents memorializing any removal proceedings or other proceedings that the government intends to rely upon at trial, or in the alternative make such materials available for inspection and copying.

(22) <u>Residual Request</u>. Mr. Garcia intends, by this discovery motion, to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. Mr. Garcia requests that the government provide his attorney with the above-requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

## VI.

## **MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS**

Mr. Garcia and defense counsel have received limited discovery in this case. Specifically, the government this week produced documents from Mr. Garcia's A-file, which defense counsel has not yet had time to review, and has not yet produced copies of audiotapes of any removal hearings. After receiving and reviewing this material, Mr. Garcia may file a motion attacking the validity of his alleged deportation, as well as a motion to suppress any statements made by him. Additionally, as new information surfaces due to the government providing discovery in response to these motions, or an order of this Court, the defense may find it necessary to file further motions, or to supplement existing motions with additional facts. The denial of this request will result in a violation, at a minimum, of Mr. Garcia's Fifth and Sixth Amendment rights.

1 | Therefore, defense counsel requests the opportunity to file further motions based upon information gained
2 | from discovery.

3 | **VII.**

4 | **CONCLUSION**

5 | For the foregoing reasons, Mr. Garcia respectfully requests that the Court grant the above motions.

7 | Respectfully submitted,

9 | DATED:     May 22, 2008            /s/ *Jennifer L. Coon*
               **JENNIFER L. COON**
10 |           Federal Defenders of San Diego, Inc.
              Attorneys for Mr. Garcia

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |

2  Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of
3  information and belief, and that a copy of the foregoing document has been caused to be delivered this day
4  upon:

5  Courtesy Copy Court

6  Assistant United States Attorney via ECF

7  Dated: May 22, 2008                                 /s/ Jennifer L. Coon
                                                      JENNIFER L. COON
8                                                      Federal Defenders of San Diego, Inc.
                                                      225 Broadway, Suite 900
9                                                      San Diego, CA 92101-5030
                                                      (619) 234-8467  (tel)
10                                                     (619) 687-2666  (fax)
                                                      e-mail: Jennifer_Coon@fd.org