1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,        )        Criminal Case No. 08-CR-1448-L
                                     )
12                    Plaintiff,     )
                                     )        **ORDER**
13          v.                       )
                                     )
14                                   )
                                     )
15  JOSE MANUEL GARCIA,              )
                                     )
16                    Defendant.     )
    ─────────────────────────────────)

17

18          On May 7, 2008, a federal grand jury in the Southern District of California returned a

19  one-count Indictment charging Defendant with being a deported alien found in the United

20  States, in violation of 8 U.S.C. § 1326 (a) and (b).  Presently before the Court is Defendant's

    Motion to Dismiss the Indictment for Invalid Deportation.  There are two deportation orders
21
    in this case.  The first is from 1995 and the second is from 1997.  Defendant urges, and the
22
    Court agrees that the key deportation at issue is the 1995 deportation.  Defendant argues that
23
    the deportation order entered against him in 1995 is invalid because (1) he did not knowingly
24
    and intelligently waive his right to counsel; (2) the immigration judge ("IJ") inadequately
25
    advised him of his appeal rights; and (3) the IJ failed to adequately explain his eligibility for
26
    a waiver of deportation under former Immigration and Nationality Act § 212(c).  The Court
27
    held a motion hearing on January 7, 2009, and after supplemental briefing by the parties,
28

1  took the matter under submission.

2       A defendant in a § 1326 prosecution "has a Fifth Amendment right to collaterally

3  attack a removal order because the removal order serves as a predicate element of his

4  conviction." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004).  To

5  succeed in a collateral challenge to a removal order, a defendant must demonstrate: "(1) that

6  he exhausted all administrative remedies available to him to appeal his removal order, (2)

7  that the underlying removal proceedings at which the order was issued improperly deprived

8  him of the opportunity for judicial review, and (3) that the entry of the order was

9  fundamentally unfair." *Id.* at 1048.  An underlying removal order is "fundamentally unfair"

10 when:  (1) the defendant's due process rights were violated by defects in his underlying

11 deportation proceeding, and (2) he suffered prejudice as a result of the defects.  *Id.* at 1047;

12 *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

13      An alien, however, is barred from collaterally attacking an underlying deportation

14 order "if he validly waived the right to appeal that order" during the deportation proceedings.

15 *Arrieta*, 224 F.3d at 1079, *citing United States v. Estrada- Torres*, 179 F.3d 776, 780-81 (9th

16 Cir. 1999).  The Government must establish by clear and convincing evidence that the waiver

17 was considered and intelligent.  *United States v. Pallares-Galan*, 359 F.3d 1088, 1097 (9th

18 Cir. 2004).  If the IJ failed to inform Defendant of available relief from deportation, his

19 waiver would not be considered and intelligent.  *Id.* at 1096; *United States v. Muro-Inclan*,

20 249 F.3d 1180, 1182 ("Where the record contains an inference that the petitioner is eligible

21 for relief from deportation, but the IJ fails to advise the alien of this possibility and give him

22 the opportunity to develop the issue, we do not consider an alien's waiver of his right to

23 appeal his deportation order to be considered and intelligent.").

24      A partial transcript was provided by Defendant.  However, it is unclear whether the

25 submission is an accurate and complete reflection of the proceedings since there was not any

26 authentication provided with the submission.  Moreover, the transcript is incomplete.  In

27 several instances Defendant's responses to questions posed by the IJ are reflected as

28 "inaudible."  *See e.g.* Transcript at 4-5.  Therefore, the Court has no reliable means of

2

determining whether Defendant was advised of available forms of relief from deportation or the full circumstances of Defendant's waiver of his right to counsel and waiver of appeal. Thus, since the burden falls upon the Government to establish an effective waiver, the Court cannot conclude that Defendant's failure to exhaust administrative remedies or pursue judicial review is sufficient to bar collateral attack of the deportation order in this proceeding.

The Court therefore must consider whether entry of the deportation order was fundamentally unfair, that is, whether Defendant's due process rights were violated by defects in the proceeding, and whether Defendant suffered prejudice as a result.  Defendant argues his deportation proceedings violated his due process rights because he did not knowingly and intelligently waive his right to counsel, he was not adequately advised regarding his right to appeal, and the IJ inadequately advised him of his eligibility for relief under § 212(c).  The Government argues Defendant's waiver of counsel was knowing and voluntary, that Defendant effectively waived his right to appeal through his repeated refusal to apply for a § 212(c) waiver, and finally that the IJ adequately informed Defendant of his eligibility for a § 212(c) waiver.

The Court finds that even if Defendant had been eligible for relief under § 212(c), and even if he was not adequately advised of the availability of the waiver,[1] his right to appeal,[2] or even if his waiver of counsel was defective,[3] Defendant still must show

---

[1] It appears from the transcript that the IJ advised Defendant that he was eligible for a § 212(c) waiver.  However, all of Defendant's responses to the IJ's questions regarding the § 212(c) waiver are "inaudible."  *See* Transcript at 4-5.  Since the transcript is incomplete, the Court is reluctant to rely on it to conclusively find the IJ's advisal was adequate.

[2] It does not appear from the transcript that Defendant was *individually* advised of his right to appeal.  While the IJ did explain the right to appeal in group format, under Ninth Circuit authority that is not enough.  *See U.S. v. Ubaldo-Figueroa*, 364 F.3d 1042, 1049 (9th Cir. 2003) ("An alien can not make a valid waiver of his right to appeal a removal order if an IJ does not expressly and *personally* inform the alien that he has the right to appeal.") (emphasis added).

[3] Again, because the transcript is incomplete, the Court is reluctant to rely on it.  The Court does note that the IJ gave a group advisal of the right to counsel at no cost to the government, stated that the group had received a list of free legal service organizations, and told the aliens that their hearing could be continued to allow time to obtain counsel.  Transcript at 2.  The IJ also addressed Defendant individually and asked whether he wanted to proceed with his hearing that day and if he wished to
(continued...)

he suffered prejudice.[4/]  *U.S. v. Gonzalez-Valerio* 342 F.3d 1051, 1054 (9th Cir. 2003).  "In order to establish prejudice, [the defendant] does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." *Arrieta,* 224 F.3d at 1079.  If the defendant "makes a prima facie showing of prejudice, the burden shifts to the government to demonstrate that the procedural violation could not have changed the proceedings' outcome." *Gonzalez-Valerio*, 342 F.3d at 1054.

Former § 212(c) allowed the Attorney General to grant discretionary relief from deportation or exclusion to lawful permanent residents who had at least seven years of unrelinquished domicile.[5/]  INA § 212(c); 8 USC 1182(c) (1995 ed.).  Under § 212(c), "an IJ must determine whether to grant relief based on all the facts and circumstances of a particular case, taking into account the social and humane considerations presented in an applicant's favor and balancing them against the adverse factors that evidence the applicant's undesirability as a permanent resident." *Yepes-Prado v. I.N.S.* 10 F.3d 1363, 1365-66 (9th Cir. 1993).  The factors to be weighed in an alien's favor include: "1) family ties within the United States; 2) residence of long duration in this country (particularly when residence

---

[3/](...continued)
represent himself.  *Id.* at 2-3.  However, it does not appear that the IJ directed any questions to Defendant regarding the implications of proceeding without counsel.  *See Ram v. Mukasey*, 529 F.3d 1238, 1242 (9th Cir. 2008) (holding alien did not validly waive his right to counsel where the IJ did not ask if he wished to proceed without an attorney *and* did not "direct any questions to [Defendant] concerning the implications of proceeding without an attorney").

[4/] Defendant argues that he is not required to show prejudice because the deportation hearing involved a deprivation of the right to counsel.  However, "[t]he Ninth Circuit has yet to decide whether prejudice is required when a petitioner had demonstrated denial of the right to counsel in deportations proceedings." *Baltazar-Alcazar v. INS*, 386 F.3d 940, 947 (9th Cir. 2004).  *See also Hernandez-Gil v. Gonzales*, 476 F.3d 803, 808 (9th Cir. 2007) (declining to address the issue); *Ram*, 529 F.3d at 1243, n.1 (same).  The Court finds it unnecessary to address the issue in light of the Court's finding that Defendant has shown prejudice.

[5/] Defendant would have been eligible to apply for a § 212(c) waiver.  In October 1987, Defendant applied for Temporary Residence, as part of the amnesty program.  He was granted temporary residence status in December 1987 and he became a lawful permanent resident on June 12, 1990. The Government does not dispute that Defendant satisfied the seven year domicile requirement.

began at a young age); 3) hardship to the petitioner or petitioner's family if relief is not granted; 4) service in the United States armed forces; 5) a history of employment; 6) the existence of business or property ties; 7) evidence of value and service to the community; 8) proof of rehabilitation if a criminal record exists; [and] 9) other evidence attesting to good character." *Id.* at 1366.  Negative factors include: "1) the nature and underlying circumstances of the exclusion or deportation ground at issue; 2) additional violations of the immigration laws; 3) the existence, seriousness, and recency of any criminal record; [and] 4) other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.*

Generally, an alien who has been convicted of a serious drug offense must demonstrate "outstanding equities in her favor to be considered for a waiver of deportation under § 212(c).  *Kahn v. INS*, 36 F.3d 1412, 1413 (9th Cir. 1994); *Ayala-Chavez v. INS*, 944 F.2d 638, 641 (9th Cir. 1991) (applying the "outstanding equities" standard in a case where the alien had been convicted of a drug possession offense).  In *Ayala-Chavez*, the Ninth Circuit noted "the immigration law clearly reflects strong Congressional policy against lenient treatment of drug offenders" and that the "application of a higher standard for drug offenders is rationally based upon the Act's manifest concern with drug activity by lawful permanent residents." *Ayala-Chavez*, 944 F.2d at 641.  However, the "outstanding equities" standard should "not be imposed in a rigid manner inevitably compelling the denial of relief." *Georgiu v. INS*, 90 F.3d 374, 378 (9th Cir. 1996).  *See also Matter of Bubano*, 20 I&N Dec. 872, 879 (BIA 1994) (noting the BIA does not have "a strict policy of denying section 212(c) relief to every alien convicted of a serious drug offense without regard to the totality of circumstances presented in the case.  Our established practice has been, and continues to be, to premise discretionary determinations on the individual factors presented in a given case.").

///

Showing "outstanding equities" can be "an extremely difficult hurdle." *Elramly v. INS*, 73 F.3d 220, 223 (9th Cir. 1995) *vacated on other grounds* 518 U.S. 1051 (1996). For example in *Ayala-Chavez*, an alien who had been convicted of possession of cocaine applied for a waiver of deportation under § 212(c). *Ayala-Chavez*, 944 F.2d at 640. The Ninth Circuit affirmed the Board of Immigration Appeals' denial of his application despite the fact he had entered the U.S. as a child, had been a lawful permanent resident for 18 years, was divorced from a U.S. citizen, had a minor child who was also a U.S. citizen, had attended public schools in the U.S. until the 11th grade, and had maintained steady employment since leaving school. The court noted the factors in the alien's favor "were substantial, but not outstanding." *Id.* at 642.

However, as the cases cited by the defendant illustrate, § 212(c) waivers were granted to aliens convicted of drug offenses. *See e.g.*, *In re Arreguin De Rodriguez*, 21 I & N Dec. 38 (BIA 1995) (finding § 212(c) relief was warranted even though alien was convicted of importing 78kg of marijuana); *Delgado-Lopez v. INS*, 39 F.3d 1186 (9th Cir. 1994) (unpublished) (IJ granted § 212(c) waiver to alien who was convicted of possession of marijuana with intent to deliver). Moreover, other district courts that have considered similar § 1326(d) motions have found plausible grounds for relief under § 212(c) existed. *See e.g. United States v. Garcia-Jurado*, 281 F.Supp.2d 498 (E.D.N.Y. 2003) (finding it was "certainly plausible" that an alien with a drug possession conviction could have received § 212(c) relief in light of his length of residence, family ties, education and employment history in the U.S.); *United States v. Lopez-Hernandez*, 2007 WL 608111 (N.D. Cal. Feb. 23, 2007) (holding alien who had resided in the U.S. since age 4, had a solid work history, and extensive family ties in the U.S., had plausible grounds for § 212 (c) relief even though he had convictions for felony possession of heroin).

Here, Defendant argues he had plausible grounds for § 212(c) relief because he had lived in the United States since the time he was a child (he came to the U.S. with his mother in 1979 when he was approximately 9 years old); he had a strong employment history

6

(Defendant reports that he has worked in the U.S. in construction and landscaping since leaving school after the 10th grade); and he had strong familial ties (his family members are either U.S. Citizens or lawful permanent residents). These factors are weighed against the fact that Defendant was convicted of a felony drug offense and that Defendant's record showed a pattern of increasing criminal activity.[6]

The Court finds that it is plausible that an IJ might have concluded Defendant was eligible for a § 212(c) waiver. Although there are undeniably negative equities from Defendant's narcotics offense, there are substantial equities in his favor. Further, in 1995, relief under § 212(c) was routinely granted. In *INS v. St. Cyr*, the United States Supreme Court noted that "51.5% of the [§ 212(c)] applications for which a final decision was reached between 1989 and 1995 were granted." *INS v. St. Cyr*, 533 U.S. 289, 296 n.5 (2001). *See also* Rannik, The Anti-Terrorism and Effective Death Penalty Act of 1996: A Death Sentence for the 212(c) Waiver, 28 U. Miami Inter-Am. L. Rev. 123, 137 n.80 (1996) (providing statistics for 1995 showing that roughly 53% of the § 212(c) applications were granted).

Therefore, the Court concludes that under the facts of this case, Defendant is entitled to relief from his underlying deportation orders under 8 U.S.C. § 1326(d).[7]

---

[6] In May 1994, Defendant was convicted of a misdemeanor violation of California Health and Safety Code § 11550(a), use or being under the influence of a controlled substance. In July 1994, Defendant was convicted of a felony violation of California Health and Safety Code § 11350, possession of a narcotic controlled substance. He was sentenced to 90 days in county jail and 3 years probation. In December 1994, Defendant was convicted of another felony violation of California Health and Safety Code § 11350 (possession of cocaine). He was sentenced to 16 months imprisonment. Defendant's 1995 deportation was based on the December 1994 conviction.

[7] Defendant also claims the 1997 deportation was invalid. Defendant argues the 1997 deportation order is invalid because (1) the IJ erroneously characterized his conviction for possession of a "billy" under California Penal Code § 12020(a) as a firearms offense rendering him removable; and (2) the IJ's conclusion he was deportable for entry without inspection was invalid on the grounds that his 1995 deportation (and resulting loss of status) was invalid. The Government concedes that the IJ erroneously characterized Defendant's conviction for possession of a "billy" under California Penal Code § 12020(a) as a deportable firearms offense. As discussed above, Defendant's 1995 deportation and resulting loss of status was invalid. Therefore, there was no valid basis remaining for Defendant's 1997 deportation.

1    Accordingly, Defendant's Motion to Dismiss the Indictment for Invalid Deportation is

2  **GRANTED**.

3    **IT IS SO ORDERED.**

4

5  DATED:  January 21, 2009

6

7  _____
   M. James Lorenz

8  United States District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28